## PFLEIDERER v FARMERS & MERCHANTS BANK

Ohio Appeals, 9th Dist, Wayne Co
No. 873.  Decided April 30, 1931

C. F. Schaber, Bucyrus, for Pfleiderer.

Weygandt & Ross and Troutman and Taggart, Wooster, for Farmers & Merchants Bank.

**PARDEE, PJ.**

We do not think this was material or prejudicial. The evidence of the cashier of the bank is to the effect that the blank indorsement was upon the note before it was signed by the defendant, and the trial judge told the jury that the defendant by his testimony did not deny that fact, and we think the trial court was right in so holding upon the defendant's testimony in answer to questions propounded by his attorney, to-wit:

"Q. Do you ever recall of endorsing any note at the bank?

"A. No.

"Q. Will you look at plaintiff's exhibit A and look on the back of it; is that your signature on the back?

"A. It is my name and it looks like my signature.

"Q. What would you say whether you ever signed that at the bank?

"A. I never signed it at the bank.

"Q. Where would you have signed it?

"A. If anywhere, it would have been at the barn.

"Q. At the time you signed that paper was that printed stamp part on it?

"A. Not to my recollection. I never seen that on any of them.

"Q. Did Kauffman at the barn have any rubber stamp?

"A. Not that I know of.

"Q. Anything said at the time you endorsed that note that you would waive any protest or notice?

"A. No sir, I don't remember when I endorsed it.

"Q. When endorsing any notes?

"A. No sir."

and in answer to questions by the attorney for the plaintiff, to-wit:

"Q. On this note that you hold in your hand, you do not recall whether the rubber stamp print was on there or not?

"A. No, sir.

"Q. You don't recall whether you signed it?

"A. No, sir.

"Q. You admit it is your signature?

"A. Yes sir, I would think it was my signature."

In addition to the foregoing, the indorsement itself shows clearly that the cashier was right in his testimony; and there can be no doubt but that the indorsement upon the note is defendant's, as defendant admits his name and his signature.

So, what is the legal effect of the indorsement as made; what was the intention of the parties?

It is true, as claimed by the defendant, that the waiver of protest appears under defendant's signature, but there can be no doubt of what he intended. His is the only name appearing as an indorser, and the evidence shows that the note was a renewal of one given by Mann to defendant and which had been negotiated at the bank. A small amount had been paid upon the principal of the original note by Mann, and the interest also had been paid by him. The defendant was an indorser upon the origin-

al note, and whether protest was waived by him when he signed the original is immaterial; it is clear to us that he intended to and did by the form of the indorsement upon the renewal note waive protest, as a matter of law. So, the trial court did not commit error in so holding.

In the amended answer the defendant alleged, and his evidence tended to prove, that he went to plaintiff's place of business and asked its cashier if plaintiff had any notes with defendant's name appearing thereon, and the cashier stated that plaintiff did not have any. The cashier upon the witness stand denied these claims of the defendant.

The defendant did not allege or prove that at the time of said inquiry he intended to pay said note, but testified that "I did not want it hanging and I wanted it collected." But he did testify that he intended to take the note up if there was one, and then that he "figured to buy some cows off him and get it straightened up," but he did not disclose this intention to the plaintiff's agent.

Upon these allegations of the answer and the evidence in support thereof, the court charged the jury, in substance, that in order to estop the plaintiff, the defendant must prove, by a preponderance of the evidence, that he would have paid the note to the bank and that he would have then proceeded in an attempt to collect the note from Mann and that he would have been able to do so.

There is no evidence that the defendant told the cashier that he would have paid said note if the cashier had told him that the bank still held it, and without that element being present, no equitable estoppel could arise in favor of the defendant.

The statement, if made as claimed by defendant, did not inform the plaintiff that defendant intended to pay said note if still unpaid. Without paying said note, so that he would be its owner and able to bring an action at law to enforce its payment, the defendant was in no worse position after said alleged conversation than he was before. In order to estop the plaintiff it was necessary to allege and prove an offer to pay, and without such offer there was no legal obligation upon plaintiff to inform the defendant in regard to said note.

The court did not commit any error in this respect in its charge to the jury.

The bill of exceptions shows that defendant requested the court to give three written requests to the jury, which the court refused.

The defendant claims that he asked that these be given before argument, but the record fails to show this to be the case. So there was no prejudicial error in this regard upon the face of the record.

Request No. 1 was properly refused under the evidence in this case, as hereinbefore pointed out in regard to the indorsement; No. 2 was properly refused, because of what has been stated herein as to estoppel; and No. 3 was properly refused because there was no evidence to sustain the statements therein contained.

From our examination of this record, we are not able to find any reason why the defendant should not pay the note, as decided by the jury, and not finding any prejudicial error in the record, affirm the judgment.

WASHBURN, J, and FUNK, J, concur.